IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:16CV778-RJC-DSC

| | |
|---|---|
| DINA R. CARR,<br>　　　　Plaintiff, | )<br>)<br>) |
| vs. | )　MEMORANDUM AND RECOMMENDATION<br>) |
| NANCY A. BERRYHILL,[1]<br>Commissioner of Social<br>Security Administration,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #11) and Defendant's "Motion for Summary Judgment" (document #15), as well as the parties' briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

The procedural history is not in dispute. The Court adopts the procedural history as stated in the parties' briefs.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Defendant herein. No further action is necessary pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Plaintiff filed the present action on November 10, 2016. She assigns error to the Administrative Law Judge's ("ALJ") assessment of her credibility and formulation of her mental Residual Functional Capacity ("RFC").[2] See Plaintiff's "Memorandum ..." at 5-6 (document #12). Plaintiff also contends that the ALJ failed to resolve conflicts between the Vocational Expert's (V.E.) testimony and the Dictionary of Occupational Titles ("DOT").

The ALJ found that Plaintiff has mild limitations in activities of daily living and moderate limitations in her ability to maintain social function, concentration, persistence and pace. (Tr. 57). The ALJ then found that Plaintiff retained the RFC to perform light work[3] with limitations to:

> no climbing of ropes ladders scaffolding[;] no more than frequent ability to perform all other postural activity[;] no more than frequent reaching but no reaching above shoulder level; no exposure to hazards, such as dangerous moving machinery and unprotected heights[;] no more than occasional exposure to environmental extremes, such as dust, gas, fumes, heat, cold, humidity; no more than occasional interaction with supervisors, coworkers, and the public[;] and no more than simple, routine, repetitive tasks performed with a pace and stress tolerance that allows for no assembly-line production.

(Tr. 58-62). The ALJ found that Plaintiff could not perform her past relevant work. Based upon a hypothetical that factored in the above limitations, the V.E. testified that Plaintiff could perform jobs as an electrical accessory assembler (DOT number 729.687-010); merchandise marker (DOT number 209.587-034); and inspector, hand packager (DOT number 559.687-074). (Tr. 92-93). The V.E. stated that there was no conflict between her testimony and the DOT. Id.

Accordingly, the ALJ found that Plaintiff was able to perform other work that existed in

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). (emphasis added).

significant numbers in the national economy and was not disabled within the meaning of the Social Security Act. (Tr. 62-64).

The parties' cross-Motions are ripe for disposition.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g).   In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the

3

evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome − so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[4] as that term of art is defined for Social Security purposes.

Plaintiff challenges the ALJ's determination of her RFC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p, available at 1996 WL 374184, at *2. The ALJ must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Id.

Plaintiff has the burden of establishing her RFC by showing how her impairments affect her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

In Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). This explicit function-by-function analysis is not necessary when functions are irrelevant or uncontested. The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff argues that the ALJ failed to account for her mental and emotional impairments in the RFC. To the contrary, the ALJ thoroughly discussed those impairments. (Tr. 55-57, 60-61). At step two, the ALJ found that Plaintiff had mild limitations in activities of daily living, and moderate limitations in her ability to maintain social function, concentration, persistence and pace. (Tr. 55-57). At step four, the ALJ addressed those impairments again, finding that Plaintiff's symptoms were controlled by medication and treatment. (Tr. 60-61). If a "symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); see also 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

The ALJ then concluded that:

Given the socially-limiting effects of the claimant's mental impairments (particularly

5

> panic attacks), I have limited her to the performance of work that requires no more than occasional interaction with supervisors, coworkers, and the public. The record shows that the claimant is capable of performing a variety of tasks well when her exposure to external stressors is reduced, and the foregoing limitation is reflective of that. Similarly, I have limited the claimant to the performance of no more than simple, routine, repetitive tasks performed with a pace and stress tolerance that allows for no assembly-line production. Such limitations provide a framework within which the claimant's talents can be appropriately utilized without unduly diminishing the spectrum of jobs for which she might qualify.

(Tr. 61).

The Court finds that the ALJ's analysis includes substantial evidence supporting the RFC limitation to "no more than occasional interaction with supervisors, coworkers, and the public; no more than simple, routine, repetitive tasks performed with a pace and stress tolerance that allows for no assembly-line production." See Mascio, 780 F.3d at 638 ("[t]he ability to perform simple tasks differs from the ability to stay on pace. Only the later limitation would account for a claimant's limitation in concentration, persistence or pace"); Jarek v. Colvin, 3:14cv620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015) aff'd by 2016 WL 626566 (W.D.N.C. Feb. 16, 2016) aff'd by 2017 WL 129024 (4th Circuit Jan. 13, 2017) (moderate limitation in pace adequately addressed by "limitation to simple, routine, repetitive tasks not at an assembly line pace").

Plaintiff also assigns error to the ALJ's credibility determination. A review of the ALJ's decision reveals that his credibility determination is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ

6

must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's fibromyalgia, multi-level spine disorder, obesity, affective disorder and anxiety disorder – which could be expected to produce some of the symptoms she claims. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

The Social Security Administration has drafted template language for inclusion in ALJ decisions. See Mascio, 780 F.3d at 638 n.9 (citing Bjornson v. Astrue, 671 F.3d 640, 644–45 (7th

Cir. 2012)). The following language related to determining credibility was criticized in Mascio:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Id. at 639. The Fourth Circuit found that this language implies that a claimant's ability to work is determined first and then used to assess his credibility. The Court concluded that this language conflicts with the Agency's regulations. Id. at 639 (citing Bjornson, 671 F.3d at 645; 20 C.F.R. § 416.929(a); SSR 96-8p).

In her Memorandum, Plaintiff concedes that the "boilerplate language" used by the ALJ here differs from Mascio, but contends it is "meaningless … nonetheless." Document #12 at 17. The Fourth Circuit has held that use of such language constitutes harmless error if the ALJ "properly analyzed credibility elsewhere." Id.; accord Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."). Here, the Court finds that the ALJ engaged in a thorough, well-reasoned credibility analysis that renders any error harmless.

Prior to Mascio, this Court found that "the boilerplate did not comprise the ALJ's entire credibility discussion, but merely served as a transition into a more detailed discussion juxtaposing Plaintiff's complaints with medical evidence that showed Plaintiff functioning at a higher capacity." Medley v. Astrue, No. 3:12-CV-311-MOC-DCK, 2013 WL 1858559, *7 (W.D.N.C. Mar. 28, 2013).

Here, the ALJ found substantial evidence to support a finding that Plaintiff's statements were less than fully credible.

The ALJ considered both the objective medical evidence and the credibility factors

including daily activities; the location, duration, frequency, and intensity of symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medications used to alleviate pain or symptoms; and other treatments utilized to relieve pain or symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c).

The ALJ found that the objective medical evidence failed to support Plaintiff's claims of disabling symptoms. (Tr. 59-60). In addition to his discussion of Plaintiff's mental impairments, the ALJ fully discussed the evidence relating to Plaintiff's fibromyalgia and other pain. Id. The ALJ noted that post cervical discectomy and fusion, the record showed that:

> Most recently, on January 16, 2015, the claimant sought treatment for "postsurgical neck pain and ... pain into her lower back," though she "state[d] that [her] medications do seem to be ... effective [in addressing her symptoms]" (Exhibit 38F/l). Upon examination, her physician found that the claimant "appears [to be] in no acute distress, does not display any aberrant behaviors[,] ... [and] is able to ambulate without the use of any assistive device" (Id.). In fact, the claimant reported that "she has been able to use less of [her] Percocet ... [and] usually only takes it in the morning and if needed in the late evening as well" (Id.).

(Tr. 60). The ALJ then explained how this evidence was reflected in his RFC finding, noting:

> Due to the documented effects of her physical impairments, I have limited the claimant to light work that involves no climbing whatsoever and no more than the frequent performance of other postural activities. By giving full credit to the potential effects of the claimant's ailments (e.g., frequent, unpredictable pain symptoms coupled with diminished strength and range of motion), I find that the claimant cannot not manage greater exertional demands. Relatedly, the lingering effects of her neck surgery justify limiting the claimant to work that requires no more than frequent reaching (and no reaching above shoulder level). In assessing her limitations, I have also accounted for the side effects (i.e., dizziness and fatigue) of the claimant's prescription medications. Thus, I have precluded the claimant from work that requires exposure to hazards, and severely limited her potential contact with environmental hazards, and working proximate to such conditions could place the claimant at significant risk of harm.

Id. The ALJ "properly analyzed [Plaintiff's] credibility," so any use of boilerplate language in the credibility determination was at most harmless error. Mascio at 639. In short, the ALJ "showed

9

[his] work." Patterson v. Comm'r of Social Security, 846 F.3d 656, 663 (4th Cir. 2017) (admonishing ALJ to "[s]how your work").

Finally, Plaintiff contends that the ALJ erred in relying on the V.E.'s testimony rather than resolving apparent conflicts with the DOT. Plaintiff argues that there is an unresolved conflict between her limitation to "no more than simple, routine, repetitive tasks performed with a pace and stress tolerance that allows for no assembly-line production" and the DOT definitions of the jobs identified by the V.E.. See Plaintiff's Memorandum at 12-17 (document #12). The ALJ stated that there were no conflicts between her testimony and the DOT.

In Pearson v. Colvin, 810 F.3d 204, 210-12 (4th Cir. Dec. 17, 2015), the Fourth Circuit held that the ALJ has not fully developed the record if there are any unresolved conflicts between the V.E.'s testimony and the DOT. Id. at 209. See also Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013) (where ALJ's analysis is incomplete, remand for further development of the record is appropriate rather than district court mining facts to support or refute ALJ's decision).

It is not Plaintiff's burden to identify this conflicting evidence during the hearing. Rather the "ALJ independently must identify conflicts between the expert's testimony and the [DOT]." Id. at 209. Merely asking the V.E. if there were any conflicts is insufficient. Id. at 210. The ALJ must elicit an explanation about any conflicts from the V.E. The ALJ must then determine whether that explanation is reasonable and provides a basis for relying on the V.E.'s testimony rather than the DOT. Id. at 209-10. Absent an explanation for any apparent conflicts, the V.E.'s testimony does not provide substantial evidence for a denial of benefits. Id. at 211.

The V.E. testified that Plaintiff could perform jobs as electrical accessory assembler (DOT number 729.687-010); merchandise marker (DOT number 209.587-034); and inspector, hand packager (DOT number 559.687-074). (Tr. 92-93). In response to questions from Plaintiff's

10

counsel, the V.E. explained that none of those jobs involve assembly line work with production quotas.  Plaintiff has attached the DOT definitions to her brief but does not explain how those definitions conflict with the V.E.'s testimony.  Rather, Plaintiff contends that the use of the word "assembler" in the first job title conflicts with the RFC limitation "no assembly-line production." Similarly, with the inspector, hand packager job, Plaintiff contends that there is a conflict with the same RFC limitation because a subset of this job is titled "production inspector,"  Plaintiff has not shown and the record does not establish a conflict between the V.E.'s testimony and those job definitions.

Plaintiff argues that the DOT's definition of the merchandise marker job is outdated because of the use of scanners and computer bar codes.  While this technological advance might impact the number of jobs available in the national economy, it does not create a conflict between the V.E.'s testimony and the DOT.   The ALJ's step five analysis was proper.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence."  Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)  (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).  This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #11) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #15) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: June 23, 2017

_____
David S. Cayer
United States Magistrate Judge