UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00778-RJC-DSC

| DINA R. CARR, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | **ORDER** |
| NANCY A. BERRYHILL | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on Dina R. Carr's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11); her Memorandum in Support, (Doc. No. 12); the Commissioner's ("Defendant's") Motion for Summary Judgment, (Doc. No. 15); its Memorandum in Support, (Doc. No. 16); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 17); and Plaintiff's Objections, (Doc. No. 18).[1]

**I.    BACKGROUND**

No party objects to the procedural or factual history as described in the Magistrate Judge's M&R. The Court therefore adopts the facts as described in the M&R, (Doc. No. 17 1–3).

---

[1] Defendant has not responded to the objections, and the time for doing so has expired. FED. R. CIV. P. 72(b)(2).

## II. STANDARD OF REVIEW

### A. Review of a Memorandum and Recommendation.

A district court may assign dispositive pretrial matters, including motions for summary judgment, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

### B. Review of a Social Security Appeal.

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir.

1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal, Plaintiff argues three challenges to the ALJ's opinion declaring Plaintiff not disabled as defined for Social Security Purposes.[2] Plaintiff claims that the ALJ erred in failing to:

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

3

(1) give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments; (2) obtain an explanation form the vocational witness after the appearance of apparent conflicts within the DOT and the accepted testimony; and (3) give legally sufficient reasons supported by substantial evidence for finding Plaintiff's testimony not entirely credible. (Doc. No. 12). In his M&R, the Magistrate Judge recommended that this Court deny Plaintiff's Motion for Summary Judgment. (Doc. No. 17). Because Plaintiff filed three objections to the Magistrate Judge's findings, this Court will review them in turn.

> A. <u>The ALJ Gave an Adequate Function-by-Function Analysis of Plaintiff's Nonexertional Mental Functions.</u>

Plaintiff first argues that the ALJ failed to give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments. (Doc. No. 12 at 6–12). In doing so, Plaintiff argues that the ALJ, in assessing Plaintiff's moderate limitation in concentration, persistence, or pace, failed to account for Plaintiff's ability to stay on task for a full workday and workweek. (<u>Id.</u> at 7).

> The ALJ assigned Plaintiff the RFC to perform light work with limitations to:
>
>> no climbing of ropes ladders scaffolding[;] no more than frequent ability to perform all other postural activity[;] no more than frequent reaching but no reaching above shoulder level; no exposure to hazards, such as dangerous moving machinery and unprotected heights[;] no more than occasional exposure to environmental extremes, such as dust, gas, fumes, heat, cold, humidity; no more than occasional interaction with supervisors, coworkers, and the public[;] and *no more than simple, routine, repetitive tasks performed with a pace and stress tolerance that allows for no assembly-line production.*

(Tr. at 58–62) (emphasis added). The Magistrate Judge found that "the ALJ's analysis includes substantial evidence supporting the RFC limitation to 'no more than occasional interaction with supervisors, coworkers, and the public; no more than simple, routine, repetitive tasks performed with a pace and stress tolerance that allows for no assembly-line production.'" (Doc. No. 17 at 6)

4

(citing Mascio, 780 F.3d at 638 ("[t]he ability to perform simple tasks differs from the ability to stay on pace. Only the later limitation would account for a claimant's limitation in concentration, persistence or pace"); Jarek v. Colvin, 3:14cv620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015) aff'd by 2016 WL 626566 (W.D.N.C. Feb. 16, 2016) aff'd by 2017 WL 129024 (4th Circuit Jan. 13, 2017) (moderate limitation in pace adequately addressed by "limitation to simple, routine, repetitive tasks not at an assembly line pace")).

The Court agrees with the Magistrate Judge's conclusion. Plaintiff argues that the ALJ ignored whether Plaintiff could stay on task throughout a full workday or workweek. In doing so, Plaintiff points to Mascio for the proposition that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). However, Plaintiff is incorrect in her assertion that "[t]he ALJ mistakenly focuses only on [Plaintiff's] capability to perform simple, routine, repetitive tasks not [Plaintiff's] ability of staying on that task." (Doc. No. 12 at 9). The ALJ went further, specifically limiting Plaintiff to jobs with pace and stress tolerance that allows for no assembly-line production. (Tr. at 58–62). This additional limitation, added to simple, routine, repetitive tasks, accounts for Plaintiff's moderate limitation of concentration, persistence or pace and his ability to task on task for a full workday or workweek.

In her objections, Plaintiff argues that the Magistrate Judge erred, arguing that Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), "held that only a determination of her ability to stay on task will account for [Plaintiff's] limitations in concentration, persistence, or pace." (Doc. No. 18 at 2). However, Plaintiff misconstrues Mascio, giving the opinion an overly broad application. Mascio does not stand for the proposition that every time an ALJ finds a moderate limitation in

concentration, persistence or pace she must thereafter detail a claimant's ability to stay on task a full workday or workweek. Mascio declined such a per se rule requiring remand where ALJs fail to perform explicit function-by-function analyses. Rather, the Court found that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. Id. at 636. Here, two critical distinctions separate Plaintiff's case from the one in Mascio. First, Plaintiff does not point to contradictory evidence within the record, merely the absence of an explanation on how Plaintiff can stay on task. See (Doc. No. 12 at 9).[3] This essentially attempts to hold the ALJ to the per se rule the Fourth Circuit explicitly rejected in Mascio. Second, the ALJ here provided limitations that directly impact impairments to concentration, persistence, or pace. While "the ability to perform simple tasks differs from the ability to stay on task," the ALJ here limited Plaintiff to "no more than simple, routine, repetitive tasks performed *with a pace and stress tolerance that allows for no assembly-line production.*" (Tr. at 58–62) (emphasis added). These additional limitations do assess concentration, persistence and pace, just as the Magistrate Judge determined. The Court cannot, therefore, determine that other inadequacies exist in the "ALJ's analysis (that) frustrate meaningful review." Mascio, 780 at 636.

> B. The ALJ Was Not Obligated to Inquire About Plaintiff's Perceived Conflicts in the Vocational Expert's Testimony.

Plaintiff also objects to the M&R's conclusion that the ALJ did not err by failing to resolve Plaintiff's perceived conflicts within the V.E.'s testimony and the DOT. (Doc. No. 18 at 4). The

---

[3] The most Plaintiff cites to evidence on the record is that the vocational expert confirmed a person that could not stay on task for 85 percent of the workday would essentially phase out of their job. She does not point to evidence in the record conflicting with a finding that Plaintiff would not be able to stay on task for 85 percent of the day given the ALJ's RFC determination.

V.E. testified that Plaintiff could perform the following jobs given her RFC limiting no assembly-line production: electrical accessory assembler (DOT number 729.687-010); merchandise marker (DOT number 209.587-034); and inspector, hand packager (DOT number 559.687-074). (Tr. at 92-93). Plaintiff argues that "[t]he DOT descriptions of the inspector and hand packager job and the assembler, electronical accessories job 'appear' to be assembly line jobs." (Doc. No. 18 at 4). Therefore, Plaintiff believes that the ALJ's requirement to ask the V.E. about conflicts and receive and explanation was triggered. (Id.); Pearson v. Colvin, 810 F.3d 204, 208–09 (4th Cir. 2015) ("[T]he ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the Dictionary").

In the M&R, the Magistrate Judge found that the ALJ did not need to inquire about inconsistencies Plaintiff perceived in the V.E.'s testimony, stating:

> Plaintiff contends that the use of the word "assembler" in the first job title conflicts with the RFC limitation "no assembly-line production." Similarly, with the inspector, hand packager job, Plaintiff contends that there is a conflict with the same RFC limitation because a subset of this job is titled "production inspector," Plaintiff has not shown and the record does not establish a conflict between the V.E.'s testimony and those job definitions.

(Doc. No. 17 at 11). The Court agrees with the Magistrate Judge. Upon review of the DOT descriptions Plaintiff attached to her pleadings, the Court does not find any mention about the pacing of assembly-line production. Merely because one "assembles" or "packages" does not mean that they do so at an assembly-line pace.

Plaintiff also objects to the M&R's determination that no apparent conflict exists between Plaintiff's RFC, the V.E. testimony, and the DOT description for a merchandise marker. Plaintiff maintains that modern merchandise markers frequently need the ability "to use data base user interface and query software (data entry software), electronic mail software such as Microsoft Outlook, and spreadsheet software such as Microsoft Excel," which "appears" to conflict with the

7

limitation of simple, routine, repetitive jobs. (Doc. No. 18 at 8–9). The Magistrate Judge found that "While this technological advance might impact the number of jobs available in the national economy, it does not create a conflict between the V.E.'s testimony and the DOT." (Doc. No 17 at 11). The Court agrees. Repetitive, simple tasks may occur on excel and word-processing programs just as much as they can occur in physical, hands-on tasks. The RFC does not limit Plaintiff from databases. Therefore, no apparent conflict exists.

C. <u>The ALJ Properly Determined Plaintiff's Credibility.</u>

Last, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ did not err in his credibility determination. (Doc. No. 18 at 5). Plaintiff argues that "[i]n the residual functional capacity discussion, other than summarizing some of [Plaintiff's] testimony [] and the boilerplate language quoted in [Plaintiff's] Brief, the ALJ does not discuss [Plaintiff's] testimony." (<u>Id.</u>). The Magistrate Judge found that the record contained evidence of Plaintiff's physical impairments which could be expected to produce the symptoms she alleges. (Doc. No. 17 at 7). However, the Magistrate Judge then found that, upon assessing whether Plaintiff's subjective complaints were consistent with the objective evidence within the record, the ALJ properly exercised his deference to conclude Plaintiff was less than credible. (<u>Id.</u> at 7–8).

Upon review, the Court finds that the ALJ did not merely rely on boilerplate language,[4] but explicitly describes inconsistencies with Plaintiff's alleged symptoms and the objective medical findings. As both Defendant and the Magistrate Judge point out, Plaintiff sought treatment only

---

[4] The presence of boilerplate language here is, at most, harmless error in light of the ALJ's description of the medical record in comparison to Plaintiff's alleged symptoms. <u>See</u> <u>Mascio</u>, 780 F.3d at 639 (finding "[t]he ALJ's error [in using boilerplate language] would be harmless if he properly analyzed credibility elsewhere."). Here, the ALJ intertwines a discussion of objective medical findings with Plaintiff's purported symptoms to justify his determination of Plaintiff's credibility.

8

for the physician to discover no apparent acute distress or aberrant behaviors. (Doc. Nos. 16 at 18; 17 at 9) (quoting Tr. at 60). And, just as Defendant and the Magistrate Judge mention, the ALJ explicitly describes how he incorporated the objective medical evidence into Plaintiff's RFC. (Doc. Nos. 16 at 18–19; 17 at 9) (quoting Tr. at 60). The ALJ states that he gives full credit to potential effects of Plaintiff's physical ailments and the side effects of her prescriptions. (Tr. at 60). The ALJ then transitions to Plaintiff's mental impairments and finds that, in the face of Plaintiff's alleged symptoms, she was becoming more independent, with definite changes in her ability to handle her panic attacks. (Id.). The ALJ also stated that despite Plaintiff's strong panic symptoms, examiners found that they were merely secondary to her other medical problems. (Id. at 60–61). In light of the discretion afforded to ALJs as they make credibility determinations, the Court finds that the ALJ sufficiently cites contradictions between the medical record and Plaintiff's alleged symptoms to justify his credibility determination.

As for all other findings that the Magistrate Judge found, but Plaintiff failed to object to, the Court agrees with, and adopts, the conclusions of the M&R after a thorough review.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **GRANTED**;
3. The Clerk of Court is directed to close this case.

Signed: February 21, 2018

Robert J. Conrad, Jr.
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants.